**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Macario DURAN, Defendant–Appellant.**

**No. 91–50177.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1993.

Decided Jan. 20, 1994.

Terrence A. Roden, and Russell Cole, Law Offices of Paul R. DePasquale, Los Angeles, CA, for defendant-appellant.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BROWNING, FARRIS, and KELLY,* Circuit Judges.

PER CURIAM:

Macario Duran appeals his sentence imposed after a jury conviction of structuring financial transactions to avoid reporting requirements in violation of 31 U.S.C. § 5324. Duran, a sheriff's deputy with the Los Angeles Sheriff's Department, was accused of stealing money seized in connection with the arrest of suspected drug dealers and money launderers. The jury failed to reach a verdict on charges of conspiracy to commit theft and income tax evasion.

The district court increased Duran's offense level two levels pursuant to § 3B1.3 of the Sentencing Guidelines which provides such an increase where a "defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3 (1990). The court stated: "Duran was an employee of the sheriff's department and this position substantially facilitated his crime by putting him in the position to acquire money in the first instance, and thereafter engage in structuring the money in an attempt to conceal it." Duran contends his status as a sheriff's deputy had no bearing on his ability to commit or conceal the offense for which he was convicted, and the abuse of trust adjustment therefore should not apply.

I

Duran does not dispute the abuse of trust adjustment would have applied had he been convicted of conspiring to steal money during the investigations in which he participated,

---

\* Honorable Paul J. Kelly, Jr., Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

since his position as a sheriff would have aided him in committing that crime, *see United States v. Hill,* 915 F.2d 502, 507 (9th Cir.1990), but contends the jury's failure to convict him on that charge precluded the district court from considering the facts underlying the charge when applying § 3B1.3. We conclude that it did not.

■ Section 3B1.3 is found in Chapter Three of the Guidelines, relating to "Adjustments," and Part B of that chapter relating to adjustments for defendant's "Role in the Offense," including Aggravating Role (§ 3B1.1), Mitigating Role (§ 3B1.2), and Abuse of Trust (§ 3B1.3). Prior to November 1990, this circuit and others had held only conduct constituting the offense of conviction was to be considered in applying § 3B1.1 et seq.[1] However, the November 1990 amendments to the Guidelines added this introductory commentary to Part B:

> The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), *i.e.,* all conduct included under § 1B1.3(a)(1)–(4), and not solely on the basis of elements and acts cited in the count of conviction.

U.S.S.G., App. C, Amend. 345.

This commentary is binding. *Stinson v. United States,* — U.S. —, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). In applying the abuse of trust adjustment, sentencing courts may now consider relevant conduct other than that involved in the offense of conviction. *See United States v. Webster,* 996 F.2d 209, 211 (9th Cir.1993) (§ 3B1.2); *United States v. Scarano,* 975 F.2d 580, 587 (9th Cir.1992) (§ 3B1.1).

■ Duran contends our decision in *United States v. Brady,* 928 F.2d 844 (9th Cir. 1991), precludes an abuse of trust adjustment based on facts underlying the charge of conspiracy to commit theft because *Brady* held a court may not "reconsider facts during sentencing that have been rejected by a jury's not guilty verdict." *Id.* at 851. *Brady* based its conclusion on the unfairness of "punishing the defendant for an offense for which he or she had been acquitted." *Id.* at 852. The jury did not acquit Duran of the charge that he had conspired to commit theft—it merely failed to reach a verdict.[2] The government is free to retry Duran on that charge, and the district court is similarly free to consider facts relating to that charge during sentencing. *Cf. United States v. Fine,* 975 F.2d 596, 603 (9th Cir.1992) (en banc) (holding a court may consider counts dismissed pursuant to a plea agreement during sentencing).

## II

■ Although in considering an abuse of trust adjustment, a sentencing court may consider conduct other than that involved in the offense of conviction, it may not consider conduct that does not meet the relevancy requirement of § 1B1.3(a)(1)–(4). *See* U.S.S.G. Ch. 3, Pt. B, intro. comment.; U.S.S.G. § 1B1.3(a). Accordingly, we must decide whether the thefts the district court concluded involved abuse of a position of trust were "relevant conduct" within the definition of such conduct in § 1B1.3(a)(1)–(4).[3]

The government contends the thefts were either "preparation for" the offense of structuring financial transactions to avoid reporting requirements under § 1B1.3(a)(1), "part

---

**1.** *See United States v. Zweber,* 913 F.2d 705, 709 (9th Cir.1990) (§ 3B1.2); *United States v. Williams,* 891 F.2d 921, 925–26 (D.C.Cir.1989) (§ 3B1.1); *United States v. Foster,* 876 F.2d 377, 378 (5th Cir.1989) (§ 3B1.3).

**2.** The government ultimately dismissed the charge.

**3.** This section provides in relevant part that adjustments under Chapter Three shall be determined on the basis of:

> (1) all acts and omissions committed or aided and abetted by the defendant, or for which the

defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, *in preparation for that offense,* or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were *part of the same course of conduct or common scheme or plan* as the offense of conviction.

U.S.S.G. § 1B1.3(a)(1)–(2) (1990) (emphasis added).

of the same course of conduct" under § 1.B1.3(a)(2), or part of a "common scheme or plan" under § 1B1.3(a)(2). We hold the district court did not err when it found that the thefts and the structuring were parts of a "common scheme or plan" under § 1B1.3(a)(2).[4]

By its terms, § 1B1.3(a)(2) applies only to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." Duran's offense—structuring financial transactions to avoid reporting requirements (covered by § 2S1.3)—is among offenses listed in § 3D1.2(d) as subject to grouping requirements of § 3D1.2(d). Accordingly, the district court properly considered facts that did not fall within the four-corners of the structuring offense but were related to that offense through a "common scheme or plan." *See United States v. Wong*, 2 F.3d 927, 928 (9th Cir.1993); *United States v. Rodriguez*, 925 F.2d 107, 111 (5th Cir.1991).

This category of conduct is broad enough to encompass conduct dissimilar from the offense of conviction. *See United States v. Hahn*, 960 F.2d 903, 910 n. 11 (9th Cir.1992). The following example of conduct that can be considered part of a "common scheme or plan" appears in the commentary to § 3D1.2(b): "The defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the car he stole." U.S.S.G. § 3D1.2(b), comment., n. 4.[5] By analogy, though theft is an offense different in nature from that of structuring a financial transaction to avoid reporting requirements, the two may be parts of a common scheme if the structuring is designed to conceal the theft.

 The district court's finding that Duran used his position with the sheriff's department to embezzle funds seized in narcotics investigations and that this conduct and his structuring offense were parts of a com-

mon scheme is not clearly erroneous. *Hahn*, 960 F.2d at 909. The government introduced evidence that the narcotics officers routinely stole large sums of money seized from drug traffickers. A fellow deputy testified Duran participated in this practice. A search of Duran's residence revealed he had purchased ten cashier's checks with cash over a five day period.[6] Although the value of these checks far exceeded Duran's income as a deputy sheriff, he presented no evidence that the money came from a legitimate source.

The sentence is AFFIRMED.

---

4. We therefore do not consider whether the thefts were in "preparation for" the structuring offense or were "part of the same course of conduct" as the structuring offense. We note, however, that the terms "same course of conduct" and "common scheme or plan" have distinct meanings. *See United States v. Perdomo*, 927 F.2d 111, 115 (2nd Cir.1991).

5. Although this example appears in the commentary to § 3D1.2(b), it is also applicable to § 1B1.3(a)(2) since both provisions refer to conduct that is part of a "common scheme or plan."

6. Nine of the cashier's checks were for $9,500, while one was for $3,000. All were used as a down payment on a new home.